### Ewing v. McClanahan.

(Decided December 19, 1919.)

## Appeal from Hickman Circuit Court.

Bills and Notes—Payment—Verdict—Sufficiency of Evidence.—In an action on a note, evidence considered, and the verdict of the jury that the note had been paid by the transfer of certain corporate stock to plaintiff, held flagrantly against the evidence.

BENNETT, ROBBINS & BENNETT for appellant.

J. D. VIA for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff. R. C. Ewing, brought suit against the defendant, W. T. McClanahan, to recover on a note for $1,000.00, dated May 5, 1907, and payable six months after date with interest at the rate of six per cent per annum until paid. Defendant admitted the execution of the note and pleaded that the note was executed for stock in the McClanahan Harness & Collar Company, of Columbia, Tennessee; that said stock was turned over to plaintiff by the defendant, and that in addition, $1,400.00 worth of stock owned by the defendant was also turned over to the plaintiff; that plaintiff took possession of the stock, sold and disposed of the corporation, and converted the money for his own use and benefit, which more than paid him for the note sued on; that said stock was turned over to plaintiff in full satisfaction of said note.

A trial before a jury resulted in a verdict and judgment for defendant. Plaintiff appeals.

A reversal is asked on the sole ground that the verdict is flagrantly against the evidence.

It appears that the McClanahan Harness & Collar Company was a corporation engaged in business at Columbia, Tennessee, and that plaintiff was its president, and defendant its general manager and also a director. One Shelton was the owner of $2,000.00 worth of the stock. Being dissatisfied with the manner in which the corporation was run, Shelton proposed to sell his stock. Plaintiff agreed to take $1,000.00 worth of the stock, and defendant the remainder. Not being able to pay cash for the stock, it was finally agreed that defendant should exe-

cute his note for $1,000.00 with plaintiff as surety. This note was afterwards sold and discounted at a bank, and after being renewed from time to time, it was finally paid by plaintiff. At that time defendant executed to plaintiff the note sued on. Shelton says that the $1,000.00 worth of stock transferred to defendant was attached to the note as collateral, but the stock was not attached to the note when discounted by the bank.

It further appears that on February 26, 1907, the McClanahan Harness & Collar Company made an assignment for the benefit of its creditors. The assets of the corporation were not sufficient to pay the creditors, and instead of the directors and stockholders receiving anything, they were compelled to pay certain notes of the corporation on which they were sureties. At the time of the execution of the note sued on, the affairs of the corporation had been wound up and its stock was worthless.

The defendant testified that he signed the note but did not owe it. He paid the note by transferring to Ewing the $1,000.00 worth of stock in the McClanahan Harness & Collar Company purchased from Shelton with the $1,000.00 note, and also the transfer of $1,400.00 worth of stock that he owned in the same company. Upon being recalled as a witness he stated that when he bought the $1,000.00 worth of stock from Shelton he turned the stock over to Ewing, who had signed his note to Shelton for the stock. He further stated that when he left Tennessee the McClanahan Harness & Collar Company had been liquidated, and that he turned over to Ewing the additional $1,400.00 worth of stock "at par value," in full satisfaction of the note that he had executed for the $1,000.00 worth of stock; that said stock was turned over to Ewing after the execution of the note sued on and was accepted by Ewing in full satisfaction of same. He also stated that he never received any dividends from the stock which he purchased from Shelton, nor did he receive any portion of the assets of the company, and added that the company's failure was due to the fact that its business was improperly managed by plaintiff and his associates. He further testified that he never promised to pay the note sued on at any time, and that he told plaintiff when the note was first executed that he did not want the stock and was not able to buy it, but plaintiff told him to go ahead and buy it and he (plaintiff) would take care of him.

·· Plaintiff testified to the circumstances under which the $1,000.00 worth of stock was purchased by defendant from Shelton. He stated that after the Shelton stock was transferred to the defendant the company declared one dividend which defendant received. After the execution of the note sued on defendant promised on two or three occasions to pay it. At one time J. D. Dobbins, plaintiff's partner, was present. He never at any time took, or agreed to take, as collateral security the stock which McClanahan purchased from Shelton, nor had he ever seen or had the stock in his possession. He never agreed to take over any stock in the company in payment of the note sued on. At the time the note was executed, the stock in that company was not worth the paper it was written on. Judge W. B. Turner, to whom the property of the harness company was assigned, testified that he wound up the company's affairs and its assets were not sufficient to pay its debts. He knew nothing of defendant's having transferred any stock to plaintiff. John D. Dobbins, who was formerly a partner of plaintiff in the hardware and furniture business and a director of the McClanahan Harness & Collar Company, stated that he was present on one occasion when defendant promised to pay the note in question.

, It will be observed that defendant testified that the stock purchased from Shelton was delivered to plaintiff at the time plaintiff became defendant's surety on the note to Shelton, and was never afterwards in possession of defendant. There is no contention that the stock was then accepted by plaintiff as payment of the note on which he was surety, and certainly it cannot be contended that it was accepted in payment of the note sued on, which was not executed until about two years later. Indeed, defendant says that after the note sued on was executed he turned over to plaintiff $1,400.00 worth of stock in the McClanahan Harness & Collar Company "at par value," and this stock was accepted by plaintiff in full satisfaction of the note. If the case were one that turned on the credibility of plaintiff and defendant, we would, of course, be compelled to uphold the verdict, but such is not the case. Not only is defendant's evidence vague and unsatisfactory, but it is utterly inconsistent with all the circumstances surrounding the transaction, as well as with the ordinary course of dealing between business men.

In the first place, at the time it is claimed the stock was turned over to plaintiff in payment of the note, the company had been liquidated and the stock was known by both plaintiff and defendant to be absolutely worthless, and would not have been accepted either at its "par value" or at any value by a man having only a slight glimmering of reason, much less a sensible business man, such as plaintiff. In the next place, the weight of the evidence is that defendant promised to pay the note after it is claimed the stock was accepted in satisfaction of the note. In the third place, a man of defendant's business experience does not ordinarily pay a note of $1,000.00 and leave it in the possession of the payee for many years thereafter. Viewing the evidence in the light of these circumstances, which speak louder than words, we are constrained to the conclusion that the verdict of the jury is flagrantly against the evidence.

Judgment reversed and cause remanded for a new trial consistent with this opinion.